### JACK EDENS v. THE STATE.

#### No. 1957.  Decided February 21, 1900.

**1.  Dying Declarations—Predicate—Bill of Exceptions.**

A bill of exceptions to the admission of dying declarations for want of a proper predicate, to be sufficient, must contain the predicate and state that it contains all the predicate as well as the dying declarations.

**2.  Evidence as to Deceased's Changing His Name.**

No error is shown in the action of the court excluding evidence as to deceased's having changed his name and the reason he gave for concealing his true name, where the name was the same as stated in the indictment.

**3.  Charge—Reasonable Doubt.**

Where the court's charge submits a proper instruction upon the reasonable doubt, this is sufficient, and it is unnecessary to apply the reasonable doubt further to every phase of the evidence.

APPEAL from the District Court of Maverick. Tried below before Hon. J. M. GOGGIN.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of William Cassaday, alias Asa Duff, on the 22d day of April, 1899.

A brief summary of the evidence shows that appellant, who, according to his own testimony, was about 17 years old, was going on foot with his little brother to Monterey, Mexico. They had just crossed the Rio Grande to Piedras Negras, and near the railroad bridge met deceased, who was a stranger to them. He had some conversation with them. When they started down the street, deceased followed and overtook them, and deceased insisted upon appellant's treating him. This appellant did, and they took drinks at several saloons. They went to the foot bridge across the river, and defendant gave deceased a dime to pay his way over to Eagle Pass, where he said he wanted to go. After getting the dime deceased refused to go and said he would stay with them. Defendant, as a witness, testified: "I was afraid of the man. I did not know who he was. I thought he lived on this side (in Texas), and paid his way over thinking he would go home." Finally they all started across the foot bridge to Eagle Pass. Defendant further testified: "We came near the end of the bridge. He seemed to know that I didn't want him with me, and said, 'If you don't want me with you, give me the dollar you have and I will go over the river.'" Defendant declined to give him the dollar, and deceased grabbed his arms from behind and said, "Dam you, give me the money

or I'll throw you off the bridge." Defendant's little brother begged deceased not to do so and deceased desisted, saying, "You may think I am fooling, but I mean every word I said." The parties then crossed the bridge to Eagle Pass, defendant paying the fare. Defendant testified: "I was ahead on the bridge when he caught me. I begged him to go away from me. He said he would make me go." Deceased tried to make defendant and his brother stop at the military post, but they went on up the main street to town. Deceased followed them, and again grabbed at defendant's arm. Defendant testified: "I jerked loose. He then said, 'G—d damn it, I will make you go my way or kill you.' I was scared and excited, * * * and came to this (Texas) side because I was afraid of this man. I was excited and thought he would kill me if I didn't do something. I shot him to keep him from killing me. He intended to kill me, I thought."

Defendant's testimony is corroborated in the main by the testimony of his little brother, Willie Edens.

The opinion below states the facts sufficiently as to deceased's name and his reasons for concealing his true name.

The paragraphs of the court's charge which are complained of are also sufficiently exhibited in the opinion.

*F. Vandervoort* and *Winchester Kelso,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appelant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

Appellant's first bill complains of the court admitting evidence of Judge Bonnet, as to certain declarations made by deceased, tendered as dying declarations. The bill states appellant objected to same, "because of the absence of several statutory requirements making as a predicate the same admissible." We have heretofore held that the bill of exceptions must contain, and state it contains, all the predicate laid upon which the dying declarations are admitted. In Highsmith v. State, ante, p. 32, we held: "The shape in which the bill is presented, in order to be considered by us, requires an investigation of the entire record as contained in the statement of facts to ascertain the predicate laid, as well as the dying declarations. It occurs to us that the bill should have contained the predicate, as well as the dying declarations." The bill of exceptions should contain all the essentials necessary to be considered by us in passing upon the question raised by appellant, and this bill does not do so. Wills. Crim. Stats., Texas, part 2, art. 796, subdiv. 28; Huffman v. State, 28 Texas Crim. App., 177. The onus is upon appellant to show in his bill the erroneous action of the court in admitting the dying declarations. McGlasson v. State, 38 Texas Crim. Rep., 351. If we were authorized, under this condition, to in-

spect the statement of facts, we would find same shows a sufficient predicate was laid. Sims v. State, 36 Texas Crim. Rep., 154.

Appellant's bills numbers 2 and 3 complain of the action of the court in not permiting appellant to elicit a part of the conversation with deceased, in which deceased first stated his name was Cassidy, and afterwards said it was Duff, and gave a reason for concealing at first his true name. The judge's explanation shows that: "When defendant offered this evidence, the court had the jury retire, and the witness R. W. Dowe stated deceased had told him he had been in the American navy, and came ashore at Tampico, and left. He did not say for what reason he deserted." We think the answer of the witness would not have been relevant. If appellant could have shown deceased's name was other than that charged in the indictment, it would have been pertinent testimony. But the explanation attached to the bills shows no variance in the name, but merely gives the explanation, as stated by deceased, as to why he gave different names. We do not think this was material, and hence there was no error in refusing to permit its introduction. Ford v. State, ante, p. 1; Kunde v. State, 22 Texas Crim. App., 96.

Appellant, in his tenth bill of exceptions, complains of the fourteenth paragraph of the court's charge, because said charge required the jury to find affirmatively from the evidence the existence of the facts necessary to constitute self-defense; and contends the court should have charged that, if they believed said facts existed, or had a reasonable doubt thereon, they would find defendant not guilty. Paragraphs 14 and 15 of the court's charge are as follows: "(14) Again, on the other hand, if the jury believe from the evidence that defendant shot and killed deceased, William Cassidy, alias Asa Duff, but believe that prior to said killing deceased had threatened to take the life of defendant, or to do defendant serious bodily harm, and that at the time said deceased was shot, he, by some act done or words spoken, coupled with his acts, if any, showed an immediate intention of carrying out such threats or taking defendant's life, or doing him some serious bodily harm, and if from the facts and circumstances viewed from his standpoint, he had reason to believe, and did believe, that he was about to suffer death or serious bodily harm at the hands of deceased, and, acting under such apprehension, if any, of danger, as the same reasonably appeared to him (defendant) at the time he fired the fatal shot that took the life of Cassidy, alias Duff, to protect himself (the defendant) from such apprehension, if any, of danger, then you will find defendant not guilty, and so say by your verdict. (15) You are further instructed that if you believe from the evidence that defendant shot and killed said William Cassidy, alias Asa Duff, as alleged in the indictment, but that at the time he did so it reasonably appeared to defendant, from all the facts and circumstances known to and surrounding him at the time, and viewed from his (defendant's) standpoint, and he believed, that it was then and there the pur-

pose of him (said William Cassidy, alias Asa Duff) to make an assault
upon him (defendant) and to take the life of him (defendant), or to
do him serious bodily harm, then defendant was not bound to retreat,
but he could stand his ground, and defend himself; and if you believe
from the evidence that he so acted, you should acquit defendant, and
so say by your verdict." It is not necessary, under the law of this
State, to place the charge of reasonable doubt at the end of each
charge. We think the court's charge wherein he tells the jury, "De-
fendant is presumed to be innocent until his guilt is established by
legal evidence beyond a reasonable doubt, and in case of a reasonable
doubt in your minds as to defendant's guilt you will acquit him,
and say by your verdict, 'Not guilty,' " is a sufficient application of the
law of reasonable doubt to the different phases of the evidence; and it
was not incumbent upon the court to attach to each clause of his
charge the law of reasonable doubt. There is nothing in the charge
before us to show that the court as a condition precedent to the con-
viction of appellant, insisted that the jury should find anything, but
the whole charge indicates a proper application of the law to the facts;
and the only legal deduction to be drawn is that under certain condi-
tion of facts the jury would be authorized to find defendant guilty of
different grades of homicide. Then the charge tells the jury, if they
have a reasonable doubt of his guilt, they will find him not guilty. We
have heretofore held that, where the court's charge contains the
reasonable doubt, it is unnecessary to apply such reasonable doubt
to every phase of the evidence, but that this reasonable doubt, when
once given, applies to all phases of the case. We have carefully read
appellant's able brief, and his insistence appears to be fortified by the
decision of Johnson v. State, 29 Texas Criminal Appeals, 153. In
that opinion we find the following language, quoting from the charge:
"If you believe from the evidence that defendant, acting either alone
or in connection with Jeff Wood, did not poison Elizabeth Rucker, as
explained in paragraph 3, or if you believe deceased was poisoned by
accident, or by her own voluntary act, or if you believe that deceased
died from natural causes, or if you believe she was poisoned by some
other person than defendant, acting alone or in connection with Jeff
Wood, then you will find defendant not guilty." Commenting on this
charge, the court say: "We think the paragraph is subject to the ex-
ception that it requires the jury to believe from the evidence the ex-
istence of the conditions which entitle him to an acquittal. It vir-
tually requires the jury to believe from the evidence that he is inno-
cent before finding him not guilty; whereas the correct rule is that the
jury must presume his innocence until his guilt has been established
by the evidence beyond a reasonable doubt. * * * Said para-
graph would have been unobjectionable if it had merely instructed
that if defendant, either alone or in concert with Wood, did not poison
deceased, or if deceased was poisoned by accident, or if she poisoned
herself, or if she died from natural causes, or was poisoned by some

other person than defendant, or the defendant and Wood acted together, defendant would not be guilty. The vice in the paragraph is in requiring the jury to believe from the evidence that some one of said conditions existed in order to warrant a verdict of acquittal." We think the charge complained of in that case, as held by the court, was incorrect, because, as there said, it makes the finding of one of the conditions therein set up a condition precedent upon which to find appellant not guilty. See Powell v. State, 28 Texas Crim. App., 393; Hall v. State, 28 Texas Crim. App., 146; Frizzell v. State 30 Texas Crim. App., 42; Tate v. State, 35 Texas Crim. Rep., 231. We have carefully examined the charge, and think it is full, and is a fair exposition of the law of the case; and we do not believe the court was required to give the charge with reference to defense of property. As shown by the record, at the time the homicide occurred nothing was said by deceased showing that he intended to rob appellant of his money. From deceased's previous conduct on the bridge, appellant may have apprehended an attempt to rob him then, but at the very time of the assault there was nothing showing such intent and purpose. Finding no error in the record, the judgment is affirmed.

*Affirmed.*

HENDERSON, Judge (Concurring).—Appellant reserved an exception to the court's charge, because, as alleged, it required the jury to believe from the evidence that the facts existed which authorized defendant to act on self-defense before they could acquit him, and that there is nowhere coupled with said charge on self-defense that, if the jury had a reasonable doubt as to the existence of said facts, they would give defendant the benefit of the reasonable doubt, and acquit him. I have carefully examined said charge, and in my opinion, it is in the condition claimed by appellant. In this connection appellant refers us to the following authorities: Johnson v. State, 29 Texas Crim. App., 150; Moore v. State, 28 Texas Crim. App., 377. I have examined said cases, and, in my opinion, they support appellant's proposition, especially the case of Johnson v. State. In opposition to this we are referred to Powell v. State, 28 Texas Crim. App., 393. Both opinions were written by the same judge, though there is no mention of Powell's case in the last opinion. In Powell's case the court held that a charge submitting an affirmative defense predicated on the belief of the jury, without coupling with it the reasonable doubt, was sufficient, holding that the general charge on reasonable doubt was adequate. In Johnson's case the contrary was held. We quote from the opinion in that case as follows: "We think the paragraph [alluding to the charge] is subject to the exception that it requires the jury to believe from the evidence the existence of the conditions which entitle him to acquittal. * * * It is true, the learned judge gave the usual instruction as to the presumption of innocence and reasonable doubt, and ordinarily such instruction is suffi-

cient; but in this case we do not think it was sufficient to correct and counteract the error in paragraph five." Now, while I believe the opinion in Johnson's case announces the better and safer rule, yet I am not prepared to say that the charge in this case was calculated to injure appellant. The jury were properly instructed in the court's charge on murder in the first and second degrees and manslaughter, and told that before they could convict defendant they must believe the State's case as to each offense beyond a reasonable doubt; and they were further instructed that, if they entertained a reasonable doubt as between said offenses, to give defendant the benefit of such doubt, and find him guilty of the lower grade of homicide. The jury were then instructed as to appellant's defense, in effect, if they believed his theory of self-defense, etc., to acquit; and at the conclusion of the charge the court gave the usual instruction on presumption of innocence and reasonable doubt. It occurs to me that an intelligent jury would naturally apply the charge on reasonable doubt to appellant's defense, especially as the reasonable doubt was coupled with each theory of the State's case. I think the charge, taken as a whole, was not misleading, or a reversal of the rule as to reasonable doubt; and was not calculated to injure appellant's rights. I therefore concur in the opinion rendered.