## D. R. RICE v. THE STATE.

### No. 3157. Decided April 11, 1906.

**1.—Murder—Service of Copy of Indictment—Waiver.**

Where defendant charged with murder procured a continuance of his case from one term to another, and at the preceding term he did not claim his two days, or asked that he be served with a copy of the indictment, before taking up his motion preparatory to trial, and did not claim this right until the subsequent term of the court when he was required to announce whether he was ready for trial; having at the preceding term of court made said application for continuance, and having full knowledge of the contents of the indictment and the proof that would be made against him, besides being on bail. Held that he waived his right to service of a copy of the indictment and his two days to get ready for trial.

**2.—Same—Jury and Jury Law—Special Venire.**

Where the amended return of the sheriff to serve a special venire showed more definitely what had been done than his original return of the writ, it was not equivalent to the service of a new return, and defendant could not claim his one day before he could be brought to trial.

**3.—Same—Evidence—Dying Declaration—Res Gestae.**

Where in a trial for murder testimony was admitted that the deceased shortly before her death said that she was going to die and wanted her children, and then said to the defendant. "You know you did it, no longer than this morning you asked me if I used the syringe every day. Go way, Ward, you know you did it!", the evidence showing that deceased used a syringe on the morning of her death in which strychnine had been placed which caused her death; such testimony was admissible as a dying declaration, as res gestæ and as matter which called upon defendant for a response and was in the nature of a confession by him; he not making a reply thereto.

**4.—Same—Evidence—Confession—Dying Declaration—Bill of Exceptions.**

Where upon trial for murder the testimony showed that deceased lived about an hour after she was stricken, and that she was stricken almost immediately after she used the syringe in the closet, and that she exclaimed in the presence of her husband, the defendant, that she was poisoned from the use of the syringe, and that he had poisoned her by placing strychnine in the syringe, and demanded to know of him what he had done with the strychnine he had that morning, whereupon he answered that he never had it; such testimony was admissible both as dying declaration and res gestæ; the deceased having first stated that she was going to die; notwithstanding such testimony might not have been admissible as a confession, defendant denying the accusation against him. Certainly the bill of exceptions did not exclude the idea that the court may have properly admitted this testimony upon one or both of the above said grounds. Davidson, Presiding Judge, dissenting.

**5.—Same—Evidence—Expert Testimony.**

Where upon trial for murder the State introduced testimony of two physicians to give their opinion as to the cause of the death of deceased and both attributed it to strychnine poisoning, but testified that they had never before come in contact with a case of strychnine poison in their practice, though both were graduates of schools of medicine and had practiced a number of years; that all of their knowledge as to strychnine poison was such as had been acquired from reading the books and study, and from what they had been taught in school; that there was a post mortem examination and strychnine found by them in the stomach and rectum of deceased. Held such witnesses were competent to testify as experts, although they had had no practical experience on the subject of inquiry.

**6.—Same—Evidence—Bill of Exceptions—Conclusions of Witness.**

Where upon trial for murder the State introduced the declaration of the deceased that she had been poisoned and that the poison was put in a syringe and the defendant did it, which declaration was made in defendant's presence there was no error in overruling defendant's objection that the testimony was a mere conclusion or opinion of the deceased. Davidson, Presiding Judge, dissenting.

**7.—Same—Evidence—Intelligence of Witness.**

On a trial for murder the court should not have permitted the witness to testify that the deceased was a lady of average intelligence.

**8.—Same—Evidence—Motive.**

On a trial for murder the court did not err in admitting testimony by the State of improper relations by defendant with the female witness two years prior to the death of deceased; ill feeling between defendant and deceased on this account having been shown. Davidson, Presiding Judge, dissenting.

**9.—Same—Circumstantial Evidence—Harmless Error.**

On a trial for murder it was not reversible error for the court to refuse to admit testimony for defense that deceased told witness a short time before her death that she was seized with a fit and fell on the floor and knocked some of her teeth out; as the rejection of such testimony was not of that material character as of itself to call for a reversal.

**10.—Same—Charge of Court—Limiting Testimony—Impeachment of Witness.**

On a trial for murder where the testimony in the impeachment of a witness was not liable to be used by the jury for any other purpose, there was no necessity for the court to so limit it in his charge to the jury; especially where such testimony

was not calculated to be appropriated by the jury as a criminative fact against appellant.

**11.—Same—Charge of Court—Murder and Manslaughter.**

Where on trial for murder the charge of the court defining malice and murder was in the usual approved form, there was no error.

**12.—Same—Charge of Court—Burden of Proof—Reasonable Doubt.**

Where on trial for murder the charge of the court, while not artistically drawn, was coupled with the charge on reasonable doubt, the objection that it shifted the burden of proof from the State to the defendant was untenable; especially where such charge was favorable to defendant.

**13.—Same—Charge of Court—Special Charge.**

Where on trial for murder the substance of the special charge was contained the court's general charge there was no error to reject the former.

**14.—Same—Charge of Court—Circumstantial Evidence.**

On trial for murder there was no error in the court's charge that the facts and circumstances proved should not only be consistent with the guilt of the accused but inconsistent with any other reasonable hypothesis, or conclusion, than that of defendant's guilt, and producing in the minds of the jury a reasonable and moral certainty that the accused and no other person did commit the offense charged against him.

**15.—Same—Charge of Court—Weight of Evidence—Emphasizing Facts.**

On a trial for murder it was error to charge the jury that the State had introduced evidence which might tend to show that defendant and other parties acting with him influenced a State's witness to leave the State and not attend the trial, and that the jury could only consider such testimony as a mere circumstance with other evidence, in determining whether defendant killed deceased and if so, his motive in doing so; and that the jury could not consider it for any other purpose as they could not convict defendant for any offense other than that named in the indictment; as this charge was on the weight of the evidence and was not authorized by law. Distinguishing Morrison v. State, 40 Texas Crim. Rep., 473; and approving Terry v. State, 45 Texas Crim. Rep., 264. Brooks, Judge, dissenting.

Appeal from the District Court of Johnson. Tried below before Hon. O. L. Lockett.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Odell, Phillips & Johnson, Ramsey & Odell,* and *E. A. Rice,* for appellant.—On question of service of copy of indictment: Brewin v. State, 12 Texas Ct. Rep., 663; article 568, White's Code Crim. Proc. On question of res gestæ: Powers v. State, 23 Texas Crim. App., 66; Holt v. State, 9 Texas Crim. App., 571; Good v. State, 18 Texas Crim. App., 39; Bradberry v. State, 22 Texas Crim. App., 273. On question of dying declaration: Bateson v. State, 10 Texas Ct. Rep., 208; sec. 1009, White's Ann. Code Crim. Proc.; Medina v. State, 63 S. W. Rep., 331; Fulcher v. State, 28 Texas Crim. App., 465; Irby v. State, 25 Texas Crim. App., 203. On question of silence as confession: Wright v. State, 36 Texas Crim. Rep., 427; Sauls v. State, 30 Texas Crim. App., 496; Low v. State, 65 S. W. Rep., 401; Kendrick v. State, 9 Humphrey, 723. On question of expert testimony of physicians: Burt v. State, 38 Texas Crim. Rep., 397; Boyle v. State, 57 Wis. Rep., 472; Soquet v. State, 40 N. W. Rep., 391. On question of excluding testimony of declaration of deceased about falling on porch in a fit: 1 Roscoe Crim.

Evidence, 31; Morrison v. State, 40 Texas Crim. Rep., 473; Newman v. Dodson, 61 Texas, 95. On question of limiting impeaching testimony: Wilson v. State, 37 Texas Crim. Rep., 384; Maines v. State, 23 Texas Crim. App., 576. On question of charge of court, on weight of evidence: Bergstrom v. State, 36 Texas, 336; Johnson v. State, 29 Texas Crim. App., 150; Ponton v. State, 35 Texas Crim. Rep., 597; Russell v. State, 37 id., 314; Spillman v. State, 38 id., 607; Moore v. State, 28 Texas Crim. App., 377. On question of motive: Barnes v. State, 37 Texas Crim. Rep., 320; Hughes v. State, 32 id., 379; Haskew v. State, 7 Texas Crim. App., 107.

*J. E. Yantis,* Assistant Attorney-General; *Mason Cleveland* and *W. Poindexter,* for the State.—On question of dying declaration and res gestæ: Wilkerson v. State, 31 Texas Crim. Rep., 86; Carter v. State, 40 id., 225. On question of copy of indictment: Scoville v. State, 77 S. W. Rep., 792; Brewin v. State, 85 id., 1140; Powell v. State, 23 Texas Crim. App., 66; Fulcher v. State, 28 id., 465; Drake v. State, 29 id., 265; McKinney v. State, 50 S. W. Rep., 708; Freeman v. State, 51 id., 230; Jennings v. State, 57 id., 642; Humphrey v. State, 83 id., 187; Holden v. State, 18 Texas Crim. App., 91; Clement v. State, 22 id., 23; Browning v. State, 26 id., 432. On question of expert testimony of physicians: Sebastian v. State, 53 S. W. Rep., 875. On question of motive: Wilkerson v. State, 31 Texas Crim. Rep., 86; Hall v. State, id., 567; Spears v. State, 56 S. W. Rep., 347. On question of reasonable doubt: Hull v. State, 10 Texas Ct. Rep., 331; Edens v. State, 55 S. W. Rep., 815; Adams v. State, Tyler Term, 1905.

HENDERSON, Judge.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life. The indictment charged appellant with the murder of his wife, on December 6, 1904, the allegation as to the cause of the death being the administration of strychnine from a fountain syringe into the rectum. Appellant and his family resided in Joshua (a little town in Johnson County) where appellant had a store. The State's testimony tends to show that appellant neglected his wife for other women, who lived in Fort Worth. The first of these women he kept for a year and a half, and then began illicit relations with another, to wit: Nellie Long, whom he was keeping at the time of the death of his wife. It is shown that, on account of his attention to other women, a disagreement arose between his wife and himself, which began two or three years before her death and continued until her death. It was shown that his wife was in the habit of using a fountain syringe almost every morning on account of constipation. Appellant knew this, and the State's testimony tends to show that he took advantage of this knowledge and placed strychnine in the syringe on the morning of the death of his wife, and that she used said syringe; and shortly after the administration of the same she was seized with cramps. Alarm was given and the

neighbors gathered in. From the time she was so seized she lived about an hour; and during this period she made various statements in the presence of her husband and neighbors relative to the cause of her death, accusing her husband of being the author thereof. The State introduced other circumstances, and among other things, that appellant endeavored to get Nellie Long, a short time previous to the death of his wife, to send her strychnine poison in some pretended headache compound for her use. The State's evidence showed that strychnine poison administered into the rectum of deceased was the cause of the death: Appellant depended on the weakness of the State's case with reference to his wife being poisoned; and conceding that she was poisoned, he insisted that the proof failed to show that he was instrumental in administering the same. This is a sufficient statement of the case to present the legal questions.

Appellant's assignments of error numbers 1 and 2 predicated on several bills of exception relate to the action of the court in taking up the case for trial at that time, appellant claiming that he was in custody at the time the indictment was found and was entitled to service of a copy thereof, and then entitled to two full days in order to prepare for trial, which had never been accorded to him. The bills show that after the indictment was returned against appellant, on January 13, 1905, he was arrested on a capias, and lodged in jail. It is shown that on the 14th day of said month, defendant entered into a recognizance for his personal appearance before the court, and was enlarged on the same day; that on the 8th of February the case was set down for trial, and on that day a continuance was granted to appellant on his written application; that at the next term of the court, to wit: June Term, 1905, the case was set down for trial on the 21st of said month; that on that day the State announced "not ready," and the case was postponed until the 28th of June, following; on that day defendant was served with a copy of the indictment, after said motion was presented, and afterwards on the 1st of July, 1905, defendant was arraigned in open court and pleaded not guilty; that the intervening time between the 28th of June and the 1st of July, was consumed in hearing the motion for change of venue, and other preliminary motions, and in selecting a jury in the case. Appellant was entitled to a service of the copy of the indictment and two days' time claimed by him, unless by the course he pursued he waived the same. Articles 540, 542 and 568, Code Criminal Procedure, have been construed by this court in a number of cases. Evans v. State, 36 Texas Crim. Rep., 32; Holden v. State, 6 Texas Ct. Rep., 483; Scoville v. State, 8 Texas Ct. Rep., 884; Browen v. State, 12 Texas Ct. Rep., 663. These and other cases appear to regard the statute as mandatory. That is, where an accused is in custody or in jail at the time of his indictment, he is entitled to service of a copy of the indictment, and to two entire days thereafter before he can be brought to trial. Evans v. State, supra. It was held in Brewin's case, supra,

·that the fact appellant was subsequently enlarged on bond and during the term of the court procured a postponement of the trial of the case, this afforded no reason why she should be denied a service of the copy of the indictment, and her two days to prepare for trial. The court say in that case: That it seems, the party was granted bail and was enlarged for a short time after her arrest, that the length of time the accused may be on bail is not a criterion, nor does it constitute a waiver." As stated, the case in effect holds that the postponement will not constitute a waiver. Here, however, appellant procured a continuance of the case from one term to another. At the preceding term he did not claim his two days, or ask that he be served with a copy of the indictment before taking up his motions, preparatory for the trial. Nor did he claim this until the subsequent term of the court, when he was required to announce at that term whether or not he was ready for trial. He then for the first time claimed his two days. It occurs to us that under these circumstances appellant waived his right to service of a copy of the indictment, and his two days to get ready to prepare for trial. In preparing his application for continuance at the February term, it is shown that defendant knew of the constituents of the charge against him, to wit: the murder of his wife by poisoning. It is further shown that he had full knowledge of the contents of the indictment; and the proof that would be made against him. Before this procedure, at the February Term, he had been on bail for some time. We hold that when the case was called for trial at that term, and he then failed to ask for service of the copy of the indictment, and for two days time thereafter in order to prepare for trial, and his meeting the case at that time with a motion for continuance was tantamount to a waiver of the service of the indictment.

Appellant reserved an exception to matters involving the service of the writ containing the special venire. The matter came up in this way: Appellant was served with the return of the sheriff; said return showed the full 250 names that had been drawn on the special venire, and the beginning contained this clause: "Summoned by the sheriff of Johnson County to serve as special veniremen." Opposite 42 of said names was marked "not found." Also at the conclusion of said writ, the clerk certified that "foregoing list of jurors is a true and correct copy of the names of the jurors summoned by the sheriff of Johnson County to serve as special jurors for the trial of said cause." On objection to said writ, the court ordered the return to be amended. The sheriff amended his return, and showed that he had served only 208 of said jurors, and went on to show that 42 were not summoned, assigning the reasons therefor. After service of said amended writ, appellant claimed a day before he could be brought to trial. This the court refused, and he took a bill of exceptions. It occurs to us that there was no error in this action of the court. The first return really showed what had been done, and un-

questionably appellant understood this.   No motion was made to quash, and if one had been made it could not have been sustained, but the return would have been amended under the direction of the court. The amended return only showed more definitely what had been done and was not equivalent to the service of a new return.   We do not believe there was any error in this action.   See article 654, White's Ann. Crim. Proc., Williams v. State, 29 Texas Crim. App., 89; Wiggins v. State, 12 Texas Crim. Ct. Rep., 195.

Following appellant's brief in discussing the assignments of error, we come to his fourth assignment, which embraces the 13th, 14th, 16th and 17th grounds of the motion for new trial, and relates to the admission by the court of the testimony of the witness Mrs. Annie Foster, Mrs. Dr. Pickett, Mrs. Valentine, and Mrs. C. E. McPherson.   The following proceedings were had with reference to witness Mrs. Foster. "Q.   What, if anything, did Mrs. Rice say with reference to whether she was going to live or die?   A.   She said, I am going to die, I want my children.'   Q.   What was the first thing Mrs. Rice said to defendant?   She said, 'Go away, Ward.'   Q.   What did she say with reference to the cause of her suffering?   A.   She said, she had used the syringe.   Q.   Was Mr. Rice present then?   A.   I think so.   She said she had used the syringe, and she had gone to the closet, and that she cramped, and she thought she could hardly walk back, and when she came back she lay on the bed thinking she would get better. She did not, and she got up, and called for help.   Q.   What if anything did she say to defendant, or in his presence there about being poisoned?   What else did she say, if anything, just. what you heard. A.   When I came back in the room at one time I went to her and put a cloth on her, and she said, 'You know you did it.'   Q.   Who was she talking to, who was there present?   A.   Mr. Rice was sitting there by her, she had been addressing him since he came into the room.   She said, 'You know you did it.   No longer than this morning you asked me if I used the syringe every day.'   Q.   What, if anything, was the language you heard Mrs. Rice say to defendant when he came in.   A.   She said, 'Go away, Ward, go away, you know you did it.' "   The questions and answers were objected to, for the reason that the testimony was hearsay, that no proper predicate had been laid to offer the same as a part of the dying declaration or as a part of the res gestæ; and because the answer of the witness as to what Mrs. Rice said to defendant or in his presence, i.e., the answer, "You know you did it.   No longer than this morning you asked me if I used the syringe every day, and the answer, "Go away, Ward, go away, you know you did it," were the conclusions and the opinion of the deceased.   And further, that it did not involve the accusation against defendant of having administered poison to the deceased, it not being made to appear that defendant knew what deceased was talking about, and defendant was not called on to make response of any character at that time.   And further, that any act or words of deceased indi-

cating aversion or ill will toward defendant, would throw no light at all on the issues of the case, but would be an act and declaration that he could not control, highly prejudicial and injurious to defendant and calculated to prejudice the jury against him. And in part the same questions were propounded to the witness Mrs. Pickett, and the same objections were urged. The court allowed this last bill with the explanation, that it was admissible as a part of the res gestæ, and also as a shorthand rendering of the facts. And in part the same questions were propounded and answers made by Mrs. Valentine, and the same objections urged, as also the witness Mrs. McPherson. In our opinion, it sufficiently appears that appellant was present at the time the transactions occurred about which these witnesses testified. At any rate it does not appear that he was not present. Nor does it appear that the transaction did not occur sufficiently near in point of time to constitute a part of the res gestæ. Nor is the idea excluded that same may have been admissible as dying declarations. Aside from the fact that the State urges that said testimony was admissible as in the nature of confessions by appellant to charges made by deceased, that is, in the nature of accusations against him to which he made no reply, which under the authorities might be taken as a confession, we think the declaration made by deceased, "I am going to die, I want my children," was a sufficient manifestation of her consciousness of approaching death. We believe furthermore, that it was competent for the deceased to have stated that her death was caused by poison administered through the syringe. This would be admissible as a dying declaration. In that connection it appears that she charged her husband with the administration of the poison, and it was a matter that he would be called upon to answer, and his failure to do so might be taken as in the nature of a confession. We think this matter occurred sufficiently near in point of time to the administration of the drug, to have constituted it a part of the res gestæ. We do not believe it required her to be an expert in order to be able to know that poison was administered to her through a syringe into her rectum. It was the statement of a fact which, without any personal experience, or any expert knowledge she might state, Castner v. Sliker, 33 N. J. L., 95. The fact that she accused her husband with the administration of the drug through the syringe might be an opinion or conclusion of deceased and not' a fact within her knowledge. But this, it occurs to us, would be admissible, upon the ground that it was a charge directed against him, and which he was called upon to answer; and the fact that he did not, might be taken as a circumstance against him, suggestive of a consciousness of guilt. It appears to us that all of this testimony from one point of view or another was admissible.

By bills numbers 18, 20 and 21, which are treated under the same numbers in appellant's motion for new trial, he raises the question as to the admissibility of the testimony of Mrs. C. E. McPherson, J. H.

Bowman, and Will Gant. This testimony was admitted over appellant's objection, and may be summed up as follows: "Q. While you were holding the bottle of medicine in the presence of the defendant, did you hear Mrs. Rice make any statement? A. Yes, sir. Q. What was it? A. Deceased said, "Will, I am poisoned. I was poisoned through the syringe.' Deceased said to defendant, 'What did you do with the bottle of strychnine you had in your vest pocket,' and he said 'I never had it.' She replied, 'Yes, you did have strychnine. My maker in Heaven knows I am telling the truth.' " This character of testimony was objected to on the ground that it involved declarations or conclusions and opinions of the deceased, and in so far as it involved any statement of an accusation by defendant against deceased concerning or relating to any circumstance in connection with the case, it would appear that there was an explicit and positive denial on the part of the defendant, and that said statement was therefore inadmissible for all of the above reasons. The court overruled the objections, and defendant reserved an exception. The court in some of the bills refers to the testimony of some of the witnesses found in the statement of facts. In support of appellant's contention he refers us to Low v. State (Tenn.), 65 S. W. Rep., 401; which cites Kendrick v. State, 9 Hump. (Tenn.), 723, and Deathridge v. State, 1 Snead (Tenn.), 80. These cases, especially the one first mentioned, support appellant's proposition: That is, the court says: "If a man be accused of an offense, and hearing the accusation neither admits nor denies it when he knows the truth and may speak, proof of the imputation having been made and of his silence, is competent, as an implied admission or circumstance tending to show his guilt. But if he make positive denial, the imputation constitutes a mere unsworn charge, and proof of it has no legal force or competency." It does not appear from said cases that it was sought to introduce said testimony either as a dying declaration or as res gestæ. For ought that appears, its introduction was insisted upon solely as in the nature of a confession by the prisoner. We believe the action of the court, as presented in the case, was correct. But it does not follow that this character of testimony, if it was a dying declaration or was res gestæ of the offense, that the court should have excluded it. We would observe that the bills presenting the question in this case do not exclude the idea that such testimony may have been admissible, and may have been admitted by the court, on the ground that the same was either a dying declaration of deceased or res gestæ. Under our rule of practice the bill of exceptions should show affirmatively the error of the court. That is, it should exclude the idea that the testimony was inadmissible for any reason. Here one of the bills shows that these expressions of deceased were made after she was stricken and before her death. The statement of facts, which is referred to, shows that deceased lived about an hour after she was stricken, and that she was stricken almost immediately after she used the syringe in the closet. The statement

of facts also shows that at the time she made the statement she was conscious of approaching death. She exclaimed that she was poisoned from the use of the syringe. She in effect charges that her husband had poisoned her by placing strychnine in the syringe, and she demanded to know what he had done with the strychnine he had that morning. This occurs to us to be a dying declaration as to the cause of her death, and was admissible as such. Besides, in point of time it was proximate to the use of the syringe; that is, the expressions were used almost immediately after deceased gave the alarm and the neighbors gathered in less than an hour, and evidently within thirty minutes from the time when, according to the State's theory, the strychnine was administered, she uttered the expression. We take it, the language used by deceased was to the effect, "I am poisoned through the syringe; the poison was placed in the syringe by you (appellant)." This looks very much like res gestæ. Notwithstanding this testimony may not have been admissible as a confession, because defendant denied the accusation and did not merely remain silent and thus tacitly admit the charge, yet it occurs to us that the same was admissible upon one or both propositions that it was a dying declaration or res gestæ. Certainly the bills of exception do not exclude the idea that the court may have properly admitted this testimony upon one or both of said grounds.

Appellant's seventh assignment of error questions the action of the court as to the admission of certain testimony of the witnesses Drs. Jas. Pickett and J. M. Townes. Both of these witnesses were permitted to give their opinion as to the cause of the death of deceased, and both attributed it to strychnine poison. Both of said witnesses testified that they had never before come in contact with a case of strychnine poison in their practice, though both were graduates of schools of medicine and had practiced medicine a number of years; that all of their knowledge as to strychnine poison was such as had been acquired from reading the books and study and from what they had been taught in school. This was objected to on the ground that it was hearsay and incompetent; that said witnesses could not be considered as experts. In support of appellant's contention we are referred to Burt's case, 38 Texas Crim. Rep., 397; and Boyle v. State, 57 Wis., 472; Soquet v. State (Wis.), 40 N. W., 391. Burt's case is simply authority for the proposition that medical books cannot be read to the jury in the trial of an accused. Nor could they be used as evidence before the jury. Soquet's case, supra, is authority directly in support of appellant's proposition; but the facts of that case were very dissimilar to the facts of this case. In that case, neither of the experts were graduates of schools of medicine. There was no postmortem examination of the deceased, and no analysis of the stomach or rectum. There, the death occurred fifteen years before the trial, and the cause of death was a question in dispute. It was there held that the two physicians could not testify as experts to the symptoms

of arsenical poison, neither having had any experience with cases of arsenical poison. Here, there was a postmortem examination: the stomach and rectum having been examined and traces of strychnine found therein. Both experts were graduates of schools of medicine and had had a number of years of practice. So we do not believe said case, which appears to stand alone, can be invoked in this case. The authorities on this subject appear to hold the rule to be thus: "A witness may be competent to testify as an expert, although he has had no practical experience on the subject of inquiry, but has derived his knowledge and information solely from study and reading of books dealing with the subject under investigation." See 5, Ency. of Evidence, p. 534, sub. 5, and note 59; 2, Elliott on Evidence, sec. 1039; Seibert et al. v. Peo., 143 Ill., 571; State v. Wood, 53 New Hamp., 484; State v. Terrell, 12 Richardson (So. Car.), 321. Under the rule laid down by these authorities, the testimony was admissible. Nor, in our opinion, does this militate against the proposition announced in Burt's case, supra, to the effect that medical works cannot be read to the jury either as evidence or as argument. A man may become an expert from his knowledge of the human system and from his knowledge of strychnine as a poison, without having ever attended a case of poison by strychnine. A man may become an expert from scientific investigation without any practical experience. At any rate, we hold on this question with the great weight of authority. We do not believe there is any real antagonism between the view taken and the Soquet case when we examine the facts of that case.

By bills of exception Nos. 25 and 25a, appellant questions the action of the court admitting testimony of Dr. Townes, as follows: "She stated that she (deceased) had been poisoned, and that the poison was put in a syringe, and that he (defendant) did it." To the admission of which statement defendant objected for the reason that they were mere expressions of opinion and conjectures of deceased; and that the testimony was hearsay, and no predicate had been laid for its admission as dying declarations, and the matters testified to were in no sense statements of facts, and were statements that deceased could not and would not have been allowed to testify to had she been on the stand; and even if admissible on the ground that they were dying declarations and a part of the res gestæ, in that event they would not be proper evidence, for the reason that the statements were mere expressions of opinion and conjecture, and such evidence was absolutely inadmissible for any purpose, and which should not have been admitted in evidence to form the basis for the State's case, and to be used by the jury against him. Of course, if it appeared from the bills of exception that the statement of deceased was a mere conclusion or opinion, and not the statement of a fact within deceased's knowledge, then it would not be admissible either as a dying declaration or as res gestæ. But we understand from the bills that deceased declared appellant put strychnine in the syringe, and the environments are not

shown so as to superinduce the conclusion that it was a mere matter of opinion. Nor is the idea excluded that this testimony may have been admissible as in the nature of a confession by appellant. The objection urged to the admission of the testimony was, that it was not claimed by deceased at the time or by the State on the trial, that deceased saw defendant put anything in the syringe or had such knowledge from any source whatever. This is not the statement of a fact, as we understand it, in connection with this testimony, but was an objection urged. In the last bill of exceptions on this subject, we note that appellant insists that said testimony was not admissible as dying declarations or a part of the res gestæ, on the ground that the statements were mere expressions of opinion and conjecture. In this connection we note that the court approved the bill with the explanation, that the statement was made in the presence of the defendant, and evidently in his hearing. As heretofore suggested, if the testimony was not admissible as dying declaration or res gestæ, then so far as the bill is concerned, the same was admissible as in the nature of a confession of appellant predicated on his silence under the charge. However, as heretofore stated, we do not agree that the bill shows that it was a mere conclusion or opinion of the witness, but as presented, shows the statement of a fact of which the witness appears to have had knowledge.

We are inclined to the opinion that the court should not have permitted the witness, Dr. Townes, to testify that deceased was a lady of average intelligence. This does not occur to us to be material, and we do not believe it should have been admitted, as it might serve the purpose with the jury of adding weight to the statement made by deceased.

Appellant also objected to the testimony of Mrs. Ollie Shanklin, to the effect that one time she maintained improper relations with the defendant; that such intimacy extended over a period of about one and one-half years; and was shown to have ceased about two years prior to the death of deceased. This was objected to as being too remote. The relations between appellant and witness having ceased long prior to the death of the deceased, and such testimony not being material was calculated to prejudice the jury against defendant. If the theory of the State is correct, the disagreements between appellant and his wife, and their ill feelings toward each other; and his desire to get rid of her, was occasioned by appellant's immoralities with this woman, and subsequently with Nellie Long. We are inclined to believe that said testimony was admissible as tending to show the occasion of ill feeling of appellant toward his wife and the beginning thereof. White's Crim. Proc., sec. 1073, sub. 2.

The court refused to admit the testimony of Mrs. Gray to the effect that deceased told witness a short time before her death that she was seized with a fit or fainting spell on the gallery sometime before the conversation narrated, and fell on the floor, and knocked some of her

teeth out. This character of testimony is admissible where it would tend to solve some controverted issue in the case. While this testimony is rather remote, still it being a case of circumstantial evidence, we are inclined to the view that it was admissible. However, its rejection is not of that material character as of itself would cause a reversal.

Appellant complains of the court's charge, as follows: "Among other things, because the court failed to limit the testimony of the witness, Holloway, as to what was said to him by State's witness, Nellie Long, for the reason, that the proper predicate had been laid, to impeach said witness Nellie Long, and the testimony of defendant's witness, Holloway, was highly important on that issue. The jury should have been instructed that it was to be considered by them as affecting the credibility of said witness, Nellie Long, as going to the weight of her testimony, and that under no circumstances should it be considered by them as a criminative fact and circumstance against defendant." We understand the rule to be that it is only the duty of the court to limit testimony to a certain purpose when the jury are liable to appropriate it to some other purpose harmful to appellant. It does not occur to us that the testimony of this witness in impeachment of Nellie Long was liable to be used by the jury for any other purpose except impeaching testimony. The only question of difference between the witnesses was as to the time when the conversation should have occurred, and as to the amount which the witness knew appellant paid to Nellie Long at any one time. The fact that there was no controversy about the matter of the conversation, but that the witnesses only differed as to the time when it should have occurred, certainly was not calculated to be appropriated by the jury as a criminative fact against appellant. Evidently without an instruction they would have understood that this question of time was merely introduced to discredit the witness. The same observations may be made with reference to the amount of money which the witness may have stated she knew appellant gave to Nellie Long at any one time: whether it was $15 or $300 would make no difference.

In the general definitions of the court on murder and manslaughter in paragraphs 8 to 12 inclusive, appellant singles out certain language of the court which he insists is a charge upon the weight of testimony, in that the charge assumed deceased was killed by poison, and that appellant did the act. We have examined said charge, and it is taken from the stereotype-charges defining malice and murder; and we do not believe the same is subject to the criticisms indulged by counsel.

The 13th paragraph of the court's charge is, as follows: "On the other hand, if you believe from the evidence or the want of it, that the defendant, D. R. Rice, did not place the strychnine poison in the syringe, if any was placed therein, with the intent that it should be injected into the rectum, bowels and body of Amanda Rice, and with the intent then and there thereby to kill the said Amanda Rice; or

if you believe that said Amanda Rice was poisoned by strychnine, but that defendant did not place the said strychnine poison in said syringe, or if he did place said strychnine in said syringe, but did not do so with the intent to poison and kill said Amanda Rice, as alleged in the indictment; or if Amanda Rice did not die by strychnine poison; or if you believe that Amanda Rice committed suicide, or that she died from other causes than said poison administered by defendant with intent to kill her as alleged in the indictment, or if you believe either of these propositions, then you will acquit the defendant; or if you have a reasonable doubt of either of these propositions, you will give the defendant the benefit of such doubt and find him not guilty." This is objected to by appellant on the ground that the same shifts the burden from the State to the defendant. In support of his contention appellant refers us to Moore v. State, 28 Texas Crim. App., 377; and Johnson v. State, 29 Texas Crim. App., 150. The only difference between this charge and the one in Johnson's case, is that it closes with the charge on reasonable doubt in favor of appellant upon either of such propositions. The court had previously in the twelfth paragraph given the jury the converse of this proposition; that is, had required the jury to believe beyond a reasonable doubt that defendant with his express malice placed or caused to be placed in a syringe poison, known as strychnine, etc., with intent that the same should be used by his wife, Amanda Rice, in taking or receiving an injection of water into the rectum, which he knew that she used every morning, with intent then and there to cause the death of said Amanda Rice, and that she did inject the same into her rectum and bowels, which caused her death, then to find him guilty of murder in the first degree, etc. Paragraph 13 of the charge was intended to to be in favor of appellant, and its purpose was to instruct the jury that, if they entertained a reasonable doubt that defendant placed the strychnine in the syringe with intent that the same should be injected into the rectum of deceased to acquit him; or if they entertained a reasonable doubt as to defendant having placed said strychnine in said syringe, or if he did so, and they entertained a reasonable doubt of his intent by that means to poison and kill said Amanda Rice; or if they entertained a reasonable doubt as to whether Amanda Rice died by strychnine poison, or if they entertained a reasonable doubt whether she committed suicide, or died from other causes than said poison administered by appellant with intent to kill her, to acquit him. Now, it may be said that this charge is not artistically drawn, but coupled as it is with the reasonable doubt contained and embraced directly in said charge, we do not believe it comes within the proposition announced in Johnson's case. See the opinion of the majority of the court in Edens v. State, 55 S. W. Rep., 815; Hull v. State, 10 Texas Ct. Rep., 331; Adams v. State, decided at Tyler Term, 1905. In this connection, it is insisted that that portion of said paragraph 13, which instructed the jury, that they would acquit defendant if they believed

from the want of evidence, etc. We do not believe that the same in the connection in which it was given, was calculated to injure appellant's rights. Of course, the jury thoroughly understood that they could only convict appellant on evidence of his guilt. The statement of the court in paragraph 13 to the jury, in effect that if they believed from the evidence, or the want of it, that defendant did not do any of the enumerated acts, or if they had a reasonable doubt, either from the evidence, or lack of evidence, that defendant did not do any of the enumerated acts, they would acquit—does not, as it occurs to us, impair any right to which appellant was entitled. This was a charge given in favor of appellant and was of a defensive character. We do not believe the authorities cited by counsel to wit: Moore v. State, 28 Texas Crim. App., 377; Johnson v. State, 29 Texas Crim. App., 150, are in point. The jury were informed in paragraph 12 of the court's charge, that they could only convict appellant if they believed certain inculpatory facts stated beyond a reasonable doubt. They were thus informed how they were to reach a verdict of guilty. And in paragraph 13 they were plainly told if they had a reasonable doubt as to any of the enumerated propositions, either from evidence or the want of evidence, they would acquit. We do not believe said charge properly considered in its relation to other charges given by the court constituted error.

We do not believe that appellant's special requested instruction number 2 was required to be given. In view of the court's charge, the propositions announced in said charge number 2, in our opinion, were but reiterations of defensive matter contained in the court's charge. Of course, if paragraph 13 of the court's charge was erroneous in omitting something contained in said special charge, then the same should have been given. But if we are correct in the view taken of the court's charge in paragraph 13, that it is not upon the weight of testimony, then it is broad and comprehensive enough to contain all that is set out in special charge number 2, which was refused by the court.

The fourteenth paragraph of the court's charge on circumstantial evidence is complained of. An examination of said charge discloses that it is in the ordinary form which has been approved by this court. However, the criticism is made that it assumes deceased came to her death by poison, which appellant contends was an issue of fact which should have been left to the jury; that is, this portion of the charge is criticised: "The facts and circumstances proved should not only be consistent with the guilt of the accused but inconsistent with any other reasonable hypothesis or conclusion than that of defendant's guilt and producing in your minds a reasonable and moral certainty that the accused and no other person did commit the offense charged against him." It is insisted that this language conveys the idea that the offense had been committed. We do not so regard the charge. On the other hand we believe that it embraces both the fact of the com-

mission of an offense and appellant's guilty connection therewith. More particularly is this apparent when we refer to other portions of the court's charge; particularly paragraph number 12, which submits the question as to the guilt of the defendant, and what it was necessary for the jury to find in order to declare him guilty.

In motion for new trial appellant complains of the following portion of the court's charge—which appears to be a special charge given by the court, but it does not appear whether it was at the request of the State or appellant, and seems to have been given by the court on his own motion, to wit: "You are further instructed in this case that the State has introduced evidence before you, which may, in your opinion, tend to show that defendant and other parties acting with him, influenced the State's witness, Nellie Long, to leave the State and not to attend the trial of this case. You are instructed that you can only consider such evidence or testimony for the purpose for which it was admitted; that is, as a mere circumstance which if you deem it worthy may be considered by you with other evidence, if there is any, in determining whether defendant killed Amanda Rice as charged in the indictment, and if so, his motive in so doing. You cannot and must not consider it for any other purpose, for you cannot convict defendant for any offense other than that named in the indictment." Appellant complains of said charge upon the following grounds, to wit: "That it was upon the weight of the evidence, and in effect tells the jury that they will consider this testimony as a circumstance together with other circumstances in determining whether or not defendant killed deceased, and if he did, they will again consider it in determining what his motive was or might have been; and that it unduly emphasizes an isolated fact occurring long after the death of appellant's wife and instructs them with regard thereto in passing on the guilt or innocence of the defendant on the particular charge made against him; that it is upon the weight of the evidence, in that the jury were instructed that the same tended to show that defendant procured the State's witness, Nellie Long, to leave the State and not attend the trial of this case, when all the testimony shows that if there was any procurement by the defendant, it was for this witness to go to Dalhart, Texas, and there was no evidence that the defendant did not know Dalhart was in the State of Texas. Further, that it was on the weight of the evidence in that it singled out a fact occurring long after the homicide, and instructed the jury that they could consider the same in determining the motive of the defendant at the time of the killing; when it was evident that the circumstance could not possibly have been in appellant's mind at the time of the alleged homicide. Furthermore, that it was injurious and prejudicial to appellant, in that it was an intimation by the court that the circumstance of Nellie Long going to Dalhart was of importance in determining his motive: in other words, that it was of importance in corroboration of her statement that he was getting her away to live with him; that

said testimony if admissible at all, was admissible as original and primary evidence, and it was not proper for the court to tell the jury to consider it upon any particular phase of the case." It occurs to us that most, if not all the objections here urged to the charge, are well taken. There was testimony which was properly introduced against appellant, for the purpose of showing that some six or eight months after the homicide, and after appellant knew what the testimony of Nellie Long would be, showing acts on his part to induce her to leave the State, so that the prosecution might be deprived of her testimony on the trial, or be forced to continue the case on account of her absence. As stated, this testimony was admissible as an inculpatory circumstance against appellant. 3 Rice on Evidence, p. 219, sec. 158. We fail to see how there was any danger of the conviction of appellant for the offense of running off a witness whose testimony was against him on this trial; or that the same could have been used by the jury for any purpose except as a circumstance which might be used by the jury with other circumstances (this being a case of circumstantial evidence) to show appellant's guilt. Consequently, the court was not required to charge upon this act or conduct of appellant at all. However, the charge complained of singles out this fact and instructs the jury that they may consider the same to aid them in determining whether defendant killed Amanda Rice, as charged in the indictment, and his motive in so doing. In the first place, the court had no right to single out this isolated fact and instruct the jury in regard thereto. White's Ann. Code Crim. Proc., sec. 810, and authorities there cited. Certainly there was no authority on the part of the court to tell the jury that they might consider this isolated fact, done long after the homicide, to aid them in determining whether defendant killed his wife. True, in their deliberations they might take into account the fact that long after the homicide, appellant was guilty of suppressing this testimony, and might regard it as a circumstance having more or less bearing on appellant's guilt of the homicide. But the court was not authorized to single out this fact and tell the jury that they could so consider it: Much less was the court authorized to inform the jury that they could regard this fact of suppression or attempted suppression of the testimony of Nellie Long as bearing on the motive which may have actuated appellant in taking the life of his deceased wife. It happened long after the homicide, and of itself could not have constituted the motive for the homicide. However, there being some testimony tending to show that the homicide was committed in order that he might live with Nellie Long, either as his wife or keptwoman, this testimony that he attempted to get her to leave the State might, under the circumstances, lead the jury to believe that they could consider this in connection with the other facts stated, in determining appellant's motive in connection with the homicide. This being a case of circumstantial evidence, and the court not being authorized to single out any particular circumstance of an

inculpatory character and charge upon it, and the court having erroneously told the jury that they could consider such testimony for a purpose not authorized by law, the same was calculated to prove prejudicial to appellant before the jury in passing on the facts and circumstances of the case. Of course, we cannot say absolutely that the charge as considered by the jury proved prejudicial to appellant; but we believe that under the circumstances, it was calculated to impair his rights. Furthermore, it occurs to us that in the preface of this charge, it was on the weight of testimony, in that it appears to assume that appellant influenced the State's witness, Nellie Long, to leave the State, and not attend the trial of the case. This was a fact to be determined by the jury and should have been left without any suggestion on the part of the court to be determined by them. We hold that this charge should not have been given. We would observe that the State strenuously insists the same charge was given in Morrison v. State, 40 Texas Crim. Rep., 473, and it was held good, and that it is applicable to this case. To our minds there is a difference between the two cases as to the facts. There, the evidence charged upon was with reference to certain forged papers—deeds, etc., to be used by him in inducing the woman to marry him, on account of which it is claimed he poisoned his wife. These papers were to be used with her as evidence of his being a man of character and property. All this occurred prior to the homicide. In this case, the act of defendant in tampering with the witness occurred seven or eight months after the death of his wife, and shows only that he was attempting to induce this witness not to appear and testify against him. In the Morrison case, the acts of forging said papers, and their use with the woman to marry whom was the occasion of the poisoning of his wife, was evidently connected with his motive. Here, the conduct of appellant occurred long after the death of his wife, and could not furnish the motive for poisoning her. So, in our opinion, there is a difference between that case and the one at bar, and a charge that might be applicable in the former case would not be applicable to this case. Accordingly we hold that the charge in question should not have been given, and is such error as requires a reversal. Terry v. State, 45 Texas Crim. Rep., 264.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, PRESIDING JUDGE.—I concur in the reversal of the judgment. I am further of the opinion that the judgment should be reversed on other grounds. Judge Henderson holds the evidence in regard to the statements made by deceased as presented in the bill of exceptions admissible, and intimates rather strongly that if the bills had more fully presented the questions, and shown the facts more in detail, these statements might have been held inadmissible on the ground that they were opinions of the declarant and not the state-

ment of a fact. This leaves the question open for another trial and in such condition that proper bills more fully presenting these matters would or might require a reversal in case of another conviction. One of these bills refers to the statement of facts for a more complete statement. As I view these bills and the statements of deceased as presented in them, they show two expressions of the opinion of the deceased, and as I understand the statement of facts as contained in the record, it is shown that they are but her opinions and not the statement of a fact. In fact the record would seem to exclude that she knew whereof she spoke and could not have known that appellant poisoned her by placing strychnine in the syringe. It occurs to me, in this connection, that one of her statements contained in the bill of exceptions to the effect that her husband had strychnine in his pocket, which was denied by him, shows that she was drawing a conclusion from a fact denied by appellant; and it further shows that she did not know the fact that strychnine was placed by her husband in the syringe, but that it was her opinion only, based on her suspicion. I believe these statements should have been excluded.

Again, I do not believe the testimony of the witness Shanks in regard to her former intimacy of an illicit nature with appellant was admissible. These relations had ceased two years prior to the death of deceased, and therefore could not have entered into any motive on his part or inducement to dispose of his wife. She had been discarded for a later mistress, and the one around which this case seems to have hung so far as the prosecution is concerned. Whatever of feeling, if any, had existed, between appellant and his wife in regard to Shanks had evidently passed. It would hardly be a conclusion in the most remote degree inferable from her evidence that appellant would have been induced to kill his wife. This evidence was illegal and of course very hurtful. Had the State offered to prove appellant's general bad reputation for chastity or immorality along the line indicated, or his reputation in that respect, it would have been clearly inadmissible. The State could not have put his reputation in evidence. If his general reputation in this respect could not be introduced, it would hardly be contended that specific acts proving the same fact could be introduced. Therefore, I believe this judgment should have been reversed for these additional reasons.

BROOKS, JUDGE (dissenting).—I agree with the opinion of Judge Henderson, except that portion which reverses the case on the court's charge limiting the testimony introduced by the State showing that appellant had assisted in running off from the court, Nell Long, one of the main State's witnesses. The opinion says this testimony was admissible, but there should not have been any limitation of its consideration by the jury in the charge of the court. I am at a loss to know how a limitation of evidence to one or more specific purposes could have injured the rights of appellant, in view of the fact that

without such limitation in the court's charge, the jury could have considered said testimony for any and all purposes: not only for the purpose for which the court limited the testimony, but for any other purpose that the caprice of the jury might have suggested. If article 723, Code Criminal Procedure, whrein it provides that no case shall be reversed upon erroneous charge, unless such error was calculated to injure the rights of the defendant,—is not a meaningless phrase, then the charge under consideration certainly comes with the purview of said statute. I do not understand how the limitation of this testimony in the charge to the one purpose could have injured the rights of appellant. As I view it, this charge is the same as that approved by this court in Morrison v. State, 40 Texas Crim. Rep., 473.